UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

SUNEGOVA,                                         :

        Plaintiff(s),                         :    REPORT AND RECOMMENDATION

        -against-                              :    09 Civ. 4956 (KMK) (LMS)

THE VILLAGE OF RYE BROOK, THE             :
VILLAGE OF RYE BROOK POLICE
DEPARTMENT, SGT. S. WILSON,               :
DET. S. GORALICK, THE CITY OF RYE
POLICE DEPARTMENT,                        :

        Defendants.                           :

------------------------------------------------------------x

**TO: The Honorable Kenneth M. Karas, United States District Judge,**

    By Order dated February 17, 2011 ("the February 17th Order"),[1] the undersigned directed that Plaintiff comply with certain discovery obligations which had not previously been complied with; the failure to comply with these obligations has caused significant delay in the prosecution of this case. The February 17th Order details the various dates and times upon which Plaintiff has been notified that failure to comply with those discovery obligations could result in the imposition of sanctions, including dismissal. The February 17th Order also sets out the anticipated result if Plaintiff failed to comply with the deadlines set forth in that Order: specifically, if Plaintiff failed to produce complete medical authorizations for her mental health providers by March 3, 2011, then the undersigned would prepare a Report and Recommendation to Your Honor recommending that she be precluded from seeking anything other than garden

---

[1] This Report and Recommendation is based in large part on the February 17, 2011, Order, which is docket #38, and familiarity with that Order is presumed.

variety emotional distress damages at trial; if Plaintiff failed to produce certified transcripts of the depositions of the named Defendants, taken in early September, 2010, on or before March 17, 2011, then the undersigned would prepare a Report and Recommendation to Your Honor recommending that she be precluded from using those transcripts or the contents of those depositions for any purpose; and, if Plaintiff failed to complete both of these discovery obligations, then the undersigned would prepare a Report and Recommendation to Your Honor recommending that this Complaint should be dismissed. The Plaintiff has failed to comply with the February 17th Order in any respect, and this Report and Recommendation therefore respectfully recommends that the Complaint in this matter, filed on May 27, 2009, should be dismissed, with prejudice.[2]

Subsequently, on March 25, 2011, the undersigned issued another Order (hereinafter "the March 25th Order)[3] in response to a letter request by counsel for the Village of Rye Brook Defendants. That Order concluded that Plaintiff had "persisted in abusing and harassing counsel for the Defendants, despite having been cautioned that doing so may result in the imposition of sanctions." March 25th Order at p. 7. The Court then Ordered, "[i]n an attempt to stem this barrage of inappropriate communications" (id.), that Plaintiff was precluded from communicating with counsel by email or telephone, was permitted to communicate with counsel

---

[2] Plaintiff has submitted objections to the February 17th Order. See docket #82. Defendants' counsel have until Monday, May 2, to respond to those objections. In the event that Your Honor sustains Plaintiff's objections to the February 17th Order, the recommendation to dismiss the Complaint based on that Order may fail as well, but the undersigned would persist in making the recommendation to dismiss based on Plaintiff's failure to comply with the March 25th Order, further discussed *infra*.

[3] The March 25th Order is docketed as #71. That Order sets forth additional communications from Plaintiff which are inappropriate. Familiarity with the March 25th Order is presumed.

by facsimile or regular mail, was precluded "from using crude and abusive language in communicating with counsel and/or the Court" (id. at p. 8), and was required to send copies of any communications with counsel to the Court. The Court expressly stated that a failure to comply with the March 25th Order may result in the imposition of monetary sanctions and, potentially, a Report and Recommendation which would recommend dismissal of all claims. Plaintiff has also failed to comply with the requirements of the March 25th Order in any respect, and as I conclude that a monetary sanction would be fruitless, I further respectfully recommend that the Complaint should be dismissed on these grounds, as well.

**Factual Background**

The history of this litigation is set out in detail in the February 17th Order, as well as the March 25th Order, and will not be repeated herein. Since the February 17th Order was issued the Plaintiff has persisted in sending emails to Defendants' counsel, some of which might be considered to be threatening, and all of which reflect her desire not to cooperate with discovery. On February 22, 2011, Plaintiff sent an email to counsel for the Village of Rye Brook Defendants, which was copied to counsel for the City of Rye Defendant, in which she stated:

> as you can study yourself through the laws, once I revoke my
> medical authorizations it means as follows:
> This medical authorization can not [be] used or any other
> information you obtained from this medical authorization.
> I will be starting another legal action against your law office and
> yourself personally if I will be not given information and materials
> to be returned to me as I asked for it.

Email dated February 22, 2011. By letter dated February 21, 2011, to counsel for the Village of Rye Brook Defendants, copy of which was sent to counsel for the City of Rye Defendant, and a copy of which was faxed to the undersigned on February 25, 2011, Plaintiff reiterated that she was "revoking my medical authorizations from the providers you previously obtained medical

authorizations for by purposely obstructing justice with the judge Smith." Plaintiff sought to have all materials from her mental health providers returned to her, except records of the dates of her treatment sessions with various mental health professionals, the cost of such sessions, and what plaintiff refers to as "final statement letters" from two of her providers. She also has permitted certain information regarding treatment with a particular medication by "Sobe gyn[ecologist]" to be retained. She demanded that counsel for the Defendants return all other medical and mental health records to her, at the next conference, and that no copies should be made of such records. Letter dated February 21, 2011.

**Waiver**

In making these demands for return of her records, Plaintiff cited to the Health Insurance Portability and Accountability Act of 1996, known as HIPAA (mistakenly referred to by Plaintiff as HIPPA)[4], New York Public Health Law Section 2803-c, New York Mental Hygiene Law Section 33.13, and Title 42, United States Code, Sections 9501 and 10841. The various statutes cited by Plaintiff are intended to protect the privacy of an individual's medical and/or mental health records. However, Plaintiff ignores completely the concept of waiver, which was discussed in the February 17th Order. As stated in the February 17th Order,

> It is important for Plaintiff to understand that she has directly put her mental and emotional state at issue by claiming damages for emotional distress in this action, specifically by claiming that she suffers from post-traumatic stress disorder as a result of the actions of the Defendants. *Such a damages claim has waived any privilege which may otherwise have applied to the notes and records maintained by her mental health professionals which are*

---

[4] Public Law 104-191, known as HIPAA, is codified primarily in Titles 18, 29, and 42 of the U.S. Code. Pursuant to the directions of Congress, the so-called Privacy Rule, intended to protect the privacy of individual's health records under HIPAA, was codified at 45 C.F.R. §§ 160 and 164.

***relevant to the time and subject matter of this action.***

Order at pp. 34-35 (emphasis added).

Waiver is a well-defined concept in the New York state courts:

> A party who affirmatively places his or her physical or mental condition in issue has waived any physician-patient privilege that may attach to the records of that condition and must provide duly-executed and acknowledged written authorizations for their release. Although a party may avoid the disclosure of medical records in such circumstances by abandoning claims of psychological or psychiatric injury, the burden of establishing that there has been no waiver of the privilege is on the party asserting the privilege. Here, the pleadings affirmatively placed the mental condition of the plaintiff . . . in issue. The plaintiff did not unequivocally abandon her claims of psychological injury before the Supreme Court and thus her mental condition remained in issue. Accordingly, since the plaintiff failed to carry her burden in opposing the motion for disclosure and in support of her cross motion for a protective order, the appellants were entitled to disclosure of the requested records.

Corbey v. Allam, 58 A.D.3d 667 (N.Y. App. Div. 2d Dept. 2009) (citations omitted); *see also* Arons v. Jutkowitz, 9 N.Y. 3d 393, 351-52 (N.Y. 2007) ("litigant is deemed to have waived the [physician-patient] privilege when, in bringing or defending a personal injury action, that person has affirmatively placed his or her mental or physical condition in issue. . . . This waiver is called for as a matter of basic fairness: A party should not be permitted to affirmatively assert a medical condition in seeking damages or in defending against liability while simultaneously relying on the confidential physician-patient relationship as a sword to thwart the opposition in its efforts to uncover facts critical to disputing the party's claim.") (internal citations and quote marks omitted).

This concept is equally well founded in the federal courts:

> It is well settled that a party waives his [or her] doctor-patient privilege when he [or she] puts his [or her] medical condition into

issue.

Ottawa Office Integration Inc. v. FTF Business Systems, Inc., 132 F.Supp.2d 215, 220 (S.D.N.Y. 2001); *see also* Bayne v. Provost, 359 F.Supp.2d 234, 237 (N.D.N.Y. 2005) ("a purpose of HIPAA was that health information, that may eventually be used in litigation or court proceedings, should be made available during the discovery phase. [45 C.F.R.] at § 164.512(e)(1)(ii). And, § 164.512(e) unequivocally permits health care providers and other covered entities to disclose protected health information without patient consent in judicial proceedings.")

Plaintiff apparently believes that she is correct in refusing to provide authorizations for her mental health treatment records, and demanding that such records that have been disclosed should be returned to her. Plaintiff could, in theory, be correct in demanding protection for those records; however, she persists in claiming serious psychological injury, which serves as a waiver of such protection. Plaintiff has elected to ignore the Court's previous explanation of the concept of waiver, and specifically she has ignored the impact of her damages claims on her otherwise applicable privacy interests. As was expressly set forth in the February 17th Order,

> when a party puts his or her mental state at issue, as the Plaintiff has done, then that party's opponent has a right to conduct an inquiry into all communications between the treating mental health professional and the patient. Such inquiries would include having access to all of the notes and records of any and all mental health professionals.

February 17th Order at p. 35.

In addition to the communications from Plaintiff which have been provided to the undersigned, counsel for the Village of Rye Brook Defendants have submitted an affidavit, docket # 69, which confirms that Plaintiff has not provided the authorizations which were the

subject of the February 17th Order.

Under these circumstances the undersigned has no choice but to recommend, respectfully, that Plaintiff be sanctioned. At the very minimum, such sanctions should include an Order precluding Plaintiff from claiming emotional distress damages beyond damages resulting from garden variety emotional distress.[5] Additionally, this willful and continuous refusal of Plaintiff to comply with her discovery obligations, combined with other sanctionable conduct, as set forth below, provides a basis for the more drastic sanction of dismissal, with prejudice.

**Depositions**

The undersigned set forth in detail in the February 17th Order the history of Plaintiff's decision to conduct depositions in this case. Also set forth is the reason for requiring a deposition transcript to be provided, in certified form, by the person taking the deposition: specifically, that a certified transcript is required in order for such a deposition transcript to be able to be used, either for motion practice or at trial, and the only alternative would be for the Court and opposing counsel to expend an extraordinary amount of time assuring that any uncertified transcript be accurate, in accordance with the recording of the deposition. The undersigned stated:

---

[5] "Claims of emotional distress that are 'garden variety' are 'simple or usual.' . . . However, claims of emotional distress which are not 'garden variety' include complex claims which 'result[ ] in a specific psychiatric disorder.' . . . Generally, the distinction hinges on whether or not the claimed injury requires medical attention. Emotional distress damages claims which do not require medical attention have been characterized as 'garden variety. . . . [Where] medical treatment is necessary, [such] alleged injuries constitute 'psychiatric injuries' rather than 'garden variety' claims of emotional distress[.]" Jessamy v. Ehren, 153 F.Supp.2d 398, 401-02 (S.D.N.Y. 2001) (internal citations omitted). Thus, it is my recommendation that Plaintiff in this case should, at the very least, be precluded from claiming any damages relating to counseling, therapy, or treatment, including but not limited to any claim of post-traumatic stress disorder.

> it is the policy of this Court to require a party taking a deposition in any way, audio, video, or by stenographic means, to obtain a certified transcript of such deposition, at the party's own cost, and to provide copies of such transcript to the opposing party. That requirement was repeatedly presented to Plaintiff, and the potential cost of such a requirement was also well presented. Moreover, the alternative and far less costly procedure of using written interrogatories was presented to Plaintiff on multiple occasions. Plaintiff made a choice to conduct depositions, following the requirements of the Court. She may not now evade that requirement.

February 17th Order at p. 37.

Even though Plaintiff has now, subsequent to the taking of the depositions, made an appropriate submission and been granted *in forma pauperis* status (see Docket #72), that circumstance does not change the situation. Plaintiff was repeatedly given the opportunity to submit her questions in written form, and was warned of the cost of conducting a deposition. Plaintiff chose to ignore the opportunity to use the less expensive option, and to ignore the Court's caution of the need for her to pay for a deposition transcript. Moreover, even if the Court were obligated to permit Plaintiff to use an audio recording of the deposition in lieu of a transcript, which it is not, Plaintiff has not even provided a copy of the audio recording to Defendants' counsel, more than six months after the depositions were conducted. See Affirmation of Caroline Lineen at ¶12, docket #69.

Under all of the circumstances, and in light of Plaintiff's persistent decision to ignore the February 17th Order of the Court, as well as the previous Orders issued on this subject, and to fail to produce the requisite transcript of the depositions conducted by the Plaintiff, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff should be sanctioned for her willful disobedience of this Court's discovery Order to produce deposition transcripts. At the very least such sanctions should include prohibition of the use of the Defendants' depositions for

any purpose, and should include granting Defendants permission to use affidavits in lieu of deposition transcripts with regard to any motions that may be filed in the matter. Additionally, and as set forth further below, based on everything set forth herein, the sanction against Plaintiff should include dismissal of this action, with prejudice.

**Courtesy**

It is worth noting that in the February 17th Order the undersigned directed that Plaintiff should refrain from abusing her adversaries and the Court, and should proceed with courtesy and civility, or potentially face additional sanctions. Almost immediately after issuance of this Order, on February 22, 2011, Plaintiff sent an email to counsel for the Village of Rye Brook Defendants in which she wrote:

> I took the bullet and I wrote [counsel's name] on it.
>
> I never shoot to kill
>
> I only shoot to win
>
> I line up all the lawyers and watch them fall
>
> like 3 musketeers in one
>
> La la la la lal la la la
>
> it is a new generation of fighters
>
> [counsel's name], I do it better
>
> [counsel's name] my lower cut is better then [sic] yours
>
> My brain is the killer I be the winner

Email attached to letter dated February 24, 2011. Threats of this sort cannot be countenanced. Even if I were not recommending dismissal for the Plaintiff's failure to cooperate with discovery, I would recommend dismissal for her lack of civility, which has escalated to threats that include

Page 9 of 17

murder, albeit in poetic form.

Plaintiff's inappropriate communications have included accusations that this Court has accepted bribes from Defendants' counsel in connection with this matter. In a letter to the undersigned dated April 4, 2011, Plaintiff wrote:

> you truly are disgusting human being, . . . All those lies and abuse for your green paper. I am more important then [sic] your green paper. My life is more important then [sic] your green paper. I am not your bank account and I am not ATM machine. You called this civilized?
> Judge who takes money to twist the case to do capitalistic justice which means it goes were money roles [sic]. . . . I would suggest Hon.L.M.Smith in the future give your pathetic orders to your favourite [counsels' names] for a change since you mentioned in your 2/18/2011 order that you treat everybody same in the courtroom, then it might bring some light in your darkness but it is not were [sic] your money came from so the darkness is going to stay were [sic] it originated from.

In a letter dated April 25, 2011, counsel for the Village of Rye Brook Defendants asked the Court to impose further sanctions against Plaintiff, including dismissal of the case, for her violation of the March 25th Order. The March 25th Order expressly prohibited Plaintiff

> from using crude and abusive language in communicating with counsel and/or the Court, *including but not limited to being prohibited from using the following words, and words or phrases that are in any way similar in content or intention to these words*: "pussy" "balls" "psycho" "retarded" "*pigs*" "bullet" "kill" and "killer." Plaintiff must confine her communications with counsel and the Court to issues directly related to this litigation[.]

March 25th Order at p. 8. Despite this express provision, in an email[6] dated April 4, 2011, Plaintiff sent the following to counsel for the Village of Rye Brook Defendants:

> [Counsel] is treating me like I am some kind of *pig* with 0 respect

---

[6] This email was sent in violation of the March 25th Order; Plaintiff did not send a copy of this communication to the Court, as also mandated in the March 25th Order.

> and dignity, total abuse like Hon.L.M.Smith total abuse none of that is professional and one of this should be happening neither in federal court or in any litigation pursuant to NY State bar ethical code. [Counsel] is abusing me and taking advantage of my pro se position since the beginning of this litigation and he does not have any consideration. Very depressive to experience this and very burden some [sic]. I will make sure this abuse will stop finally since there is 0 consideration to my difficult position. I will not be treated like a *pig* and I will not be abused and I will not be taken advantage of again.

The following day, April 5, 2011, Plaintiff sent the following one sentence email[7] to counsel for the Village of Rye Brook Defendants: "stupid abusive and lying jerk [Counsel]."

Ms. Sunegova's communications with counsel have also included perplexing movie references, along with references to making things bulletproof, and accusations of counsel "crafting" as well as hiding things from Plaintiff. On April 20 Plaintiff sent the following email[8] to counsel for the Village of Rye Brook Defendants:

> Hello [Counsel],
>
> You are kind of crafty,
> but I think you are missing proofreader,
>
> maybe [Counsel for the City of Rye] could be good one for you.
>
> It is funny, everytime you craft you make like many copies of the same page, why is that? Are you like nervous when you crafting? Also, when you shuffling things around in an effort to hide them . . . . . . . . . . . . . . .

In a second email to the same attorney sent on April 20 Plaintiff wrote:

> Hello [Counsel],
>
> when you crafting you have to make it bulletproof like Detective

---

[7] See note 5, *supra*.

[8] See note 5, *supra*.

> Lodllow[9] in the movie Street Kings, when he was crafting he made
> sure it was bulletproof. like when he killed that Korean Mafia, he
> set it up bulle[t]proof.

This was followed on April 22, 2011, with an email which reads: "[Counsel] is not perfectionist, hm too bad for Detectiv and Sgt. Drafting requries [sic] perfectionism."

There have been other situations in which threats of various sorts have resulted in sanctions, including dismissal. In Cameron v. Lambert, 07 Civ. 9258 (DC), 2008 WL 4823596 at *4 (November 7, 2008), in which the *pro se* plaintiff behaved so inappropriately during a deposition that opposing counsel sought sanctions, the Honorable Denny Chin, United States District Judge opined:

> It may be that, because he is pro se, plaintiff is entitled to some
> latitude generally, but he is not entitled to any latitude when it
> comes to threatening and inappropriate conduct. See Segarra v.
> Messina, 153 F.R.D. 22, 30 (N.D.N.Y.1994) ( "pro se status will
> not shelter a litigant from sanctions"). His unfamiliarity with the
> legal process is no excuse for threatening physical force,
> disparaging counsel, using profanity, and becoming so angry that
> he is lifting and dropping furniture. Moreover, the deposition had
> not been going on for an unreasonably long time-it started at 10:20
> and ended at 2:45, and that time included a lunch break as well as
> other breaks. Plaintiff's complaints that the deposition was going
> on too long and that defense counsel was repeating his questions
> over and over are not well-founded. And, of course, even assuming
> he had cause to complain, his language and behavior still were
> inexcusable.

Similarly, in the instant case Ms. Sunegova is unhappy with decisions that have been made, and is unhappy with what she perceives as a lack of discovery from defense counsel. Despite this discontent, she is not entitled to disparage counsel and the Court, use inappropriate language,

---

[9] According to the Internet Movie Database, found at http://www.imdb.com/title/tt0421073/, last checked April 27, 2011, the movie Street Kings was a 2008 release about a Los Angeles police officer who was "forced to go up against the cop culture he's been a part of his entire career, ultimately leading him to question the loyalties of everyone around him."

and make threats.

In Kalwasinski v. Ryan, 96 Civ. 6475, 2007 WL 2743434 (W.D.N.Y. Sept. 17, 2007), a civil rights plaintiff who was incarcerated sent a letter in which he threatened that he had associates who were planning to murder the defendants and their families. The Court said:

> It is well settled that federal courts have the inherent authority to impose sanctions, including dismissal, for a litigant's bad faith conduct. This authority is governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. That said, the sanction of dismissal is a drastic remedy that should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions. However, there are circumstances where the sanction of dismissal is warranted, because a party's conduct is due to willfulness, fault, or bad faith. Dismissal is particularly appropriate where the plaintiff's conduct is so egregious that the Court seeks not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.
>
> Death threats directed at an opposing party and a witness are sufficiently serious to warrant the sanction of dismissal. . . . In the present case, it is difficult to imagine conduct more offensive to the administration of justice than a threat to murder a witness or a defendant. Whether Kalwaskinski [sic] or "his associates" had the ability to carry the threat out is besides the point. The record clearly supports a finding that plaintiff intended to intimidate participants in the administration of justice by making threats of lethal physical harm in order to influence the outcome of the litigation. Such conduct cannot be countenanced under any circumstances.

Id. at *2. The undersigned reaches the same conclusion here. Plaintiff has previously engaged in inappropriate communications (*see* February 17th Order at pp. 26-27), and was thereafter cautioned that continuation of such communications would result in sanctions, including potentially dismissal. *See* Order at pp. 42-43. "The fact that one appears *pro se* is not a license to abuse the process of the Court and to use it without restraint as a weapon of harassment and

libelous bombardment." <u>Kane v. City of New York</u>, 468 F.Supp. 586, 592 (S.D.N.Y. 1979) (Weinfeld, J.) Plaintiff has now raised the level of insult to what can only be perceived as threats against counsel, and libelous allegations against counsel and the Court. The undersigned is satisfied that no intermediate sanctions would have any effect on Plaintiff's behavior, just as previous Orders of the Court have had no effect. I therefore respectfully recommend that Your Honor should not permit such conduct by Plaintiff to continue, and further recommend that dismissal is the only appropriate sanction.

### Sanctions

Plaintiff has been cautioned repeatedly, both orally and in writing, that a failure to cooperate with discovery may result in the imposition of sanctions, including possible dismissal of her claims. The Court has extended itself extraordinarily throughout this litigation, in order "to afford a special solicitude to [her as a] *pro se* litigant[]." *See* <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). Despite the lenience with which the Court has treated Plaintiff's failure and delays, and despite the cautions which have repeatedly been given, Plaintiff persists in refusing to provide the required discovery. The undersigned has no choice but to conclude that the failures noted above are wilful, and to recommend dismissal as the appropriate and necessary sanction.

"[A]ll litigants, including *pro ses*, have an obligation to comply with court orders[.]" <u>Minotti v. Lensink</u>, 895 F.2d 100, 103 (2d Cir.1990). Failure to comply with such orders, including discovery orders, may result in sanctions. Such sanctions may include dismissal with prejudice. "Dismissal of a *pro se* litigant's action may be appropriate 'so long as a warning has been given that non-compliance can result in dismissal.' <u>Valentine v. Museum of Modern Art</u>, 29 F.3d 47, 50 (2d Cir.1994)." <u>Agiwal v. Mid Island Mortg. Corp.</u>, 555 F.3d 298, 302 (2d Cir. 2009); <u>see also</u> <u>Quiles v. Beth Israel Medical Center</u>, 168 F.R.D. 15, 19 (S.D.N.Y. 1996) (failure

of *pro se* to comply with discovery orders over one and one-half years resulted in dismissal as necessary sanction). There can be no question that in this case Plaintiff has been warned of the consequences of continuing to obstruct discovery in this case. This "harsh remedy" of dismissal is appropriate to this "extreme situation[]", because Plaintiff has, at the very least, evidenced "wilfulness, bad faith, [and] fault" in remaining non-compliant. Agiwal, 555 F.3d at 302.

The Plaintiff has not established and cannot establish that dismissal is not an appropriate sanction. See Nieves v. City of New York, 208 F.R.D. 531, 535 (S.D.N.Y. 2002) (*citing* Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 852-54 (2d Cir. 1995)), *quoted with approval in* Agiwal, 555 F.3d at 302-03. Plaintiff has offered nothing which would justify her failure to comply with the discovery orders of the Court. There are no lesser sanctions that would remedy the discovery failures that have occurred and that continue to occur. The Plaintiff's noncompliance has been ongoing throughout this litigation, as set forth in the history of this litigation detailed in the February 17th Order, and the March 25th Order, and it is apparent from Plaintiff's continued communications with counsel and the Court that she does not intend ever to remedy her failures. Finally, as noted in detail in the February 17th Order, Plaintiff has been given many warnings of the consequences of these failures, including warnings of possible dismissal of her case. Moreover, as also noted in the February 17th Order, Plaintiff's failure to produce these items will prejudice Defendants in their ability to prosecute a defense. See Masi v. Steely, 242 F.R.D. 278, 285 (S.D.N.Y. 2007) (another factor to consider is whether the behavior prejudiced the adverse party).

Even if Your Honor were to consider a lesser sanction than dismissal for the discovery violations detailed herein, the additional proof that Plaintiff has persistently and continually engaged in inappropriate communications with counsel and the Court in this action, set forth

herein and in the previous Orders, provides more than adequate support for an order of dismissal with prejudice.[10]  See Nelson v. Eaves, 140 F.Supp.2d 319, 322 (S.D.N.Y. 2001) (Judge Chin dismissed a *pro se* prisoner's Complaint after concluding that the prisoner had written abusive, demeaning and threatening letters to defense counsel; the Court concluded that the communications evidenced malice and an intent to harass, and that they showed a disdain for the judicial system which had to be guarded against).  This Plaintiff has repeatedly expressed her contempt for the Court, and for the Court's rulings, as well as repeatedly expressing with vitriol her dislike and distrust of defense counsel.  Neither the Court nor counsel should be required to receive and review further such communications from her, under the thinly veiled pretense that those communications have anything to do with her Complaint against the Defendants.

## CONCLUSION

For the reasons set forth herein, I respectfully report and recommend that the Complaint in this action be dismissed, with prejudice.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(e), or a total of seventeen (17) days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Kenneth M. Karas, United States District Judge, and to the chambers of the undersigned at the Charles L. Brieant, Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains,

---

[10] See also note 2, *supra*.

New York, 10601.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Karas, and should not be made to the undersigned.

Dated: April 28, 2011
      White Plains, New York

Respectfully submitted

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York